1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                            )
JAY BENDTSEN,                               )
                                            )        Case No. C04-1390L
                        Plaintiff,          )
        v.                                  )
                                            )        ORDER GRANTING IN PART
NATIONWIDE MUTUAL INSURANCE                 )        PLAINTIFF'S MOTION FOR
COMPANY, *et al.*,                          )        SUMMARY JUDGMENT AND
                                            )        DENYING DEFENDANTS'
                        Defendants.         )        CROSS-MOTION
_____)

        This matter comes before the Court on plaintiff's "Motion for Summary

Judgment" and defendants' cross-motion.  Having reviewed the memorandum, administrative

record, declarations, and exhibits submitted in this matter, the Court finds as follows:

        (1) The parties' cross-motions for summary judgment raise preliminary issues regarding

the standard and scope of the Court's review which must be determined before the merits of the

motions can be considered.  The Supreme Court has held that "[a] denial of benefits challenged

under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit

plan gives the administrator or fiduciary discretionary authority to determine eligibility for

benefits or to construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S.

101, 115 (1989).  Although plaintiff argues that the administrator's acknowledged authority to

construe and interpret the provisions of the plan does not give it discretionary authority to

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

determine eligibility, plaintiff ignores the plain language of the plan. Section 13.1.6 specifically grants to the administrator the power "to exercise discretion and authority to construe and interpret the provisions of the Plan, *to determine eligibility to participate in the Plan*, and make and enforce rules and regulations under the Plan to the extent deemed advisable . . . ." Administrative Record ("AR") Doc. #1 at 94 (emphasis added). In such circumstances, the Court will review the administrator's decision for an abuse of discretion (Bergt v. Retirement Plan for Pilots Employed by Mark Air, Inc., 293 F.3d 1139, 1142 (9th Cir. 2002)) and the decision will be reversed only if it is arbitrary and capricious (Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 875 (9th Cir. 2004)).

(2) With regards to the scope of the review, the general rule is that the district court should evaluate the plan administrator's decision based on the evidence that was before the administrator at the time it made its decision. Kearney v. Standard Ins. Co., 175 F.3d 1084, 1090-91 (9th Cir. 1999). Although new information may be considered where necessary to enable the district court to make an informed and independent (*i.e.*, *de novo*) judgment regarding the merits of the administrator's determination (Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan, 46 F.3d 938, 943 (9th Cir. 1995)), such an expansive review is not proper where the standard is abuse of discretion (Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan, 349 F.3d 1098, 1110 (9th Cir. 2003)). The Ninth Circuit has found that "[p]ermitting the district court to examine evidence outside the administrative record [in such circumstances] would open the door to the anomalous conclusion that a plan administrator abused its discretion by failing to consider evidence not before it." Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469, 147 (9th Cir. 1993).

Defendants object to plaintiff's submission of declarations and documents regarding plaintiff's activities on June 27, 2003, his understanding of the confirmation letter he received from defendants, and the anticipated expenses related to plaintiff's medical treatments.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT          -2-

1   Because these documents were not before defendant when it made its final coverage

2   determination, the Court will not consider the new evidence for purposes of determining whether

3   the administrator's decision was arbitrary and capricious.

4   　　　(3) As discussed above, the abuse of discretion standard requires reversal of the

5   administrator's findings and/or decisions if they are arbitrary and capricious.  The administrator

6   can abuse its discretion by (a) rendering decisions without any explanation, (b) construing plan

7   provisions in a manner that conflicts with the plain language of the plan, (c) failing to develop

8   facts necessary to make a reasoned decision, or (d) basing its decision on an erroneous view of

9   the law.  <u>Schikore v. BankAmerica Supplemental Retirement Plan</u>, 269 F.3d 956, 960-61 (9th

10  Cir. 2001).  A review of the administrative record shows that the administrator failed to develop

11  facts necessary to make a reasoned decision in this case and rendered its decision without any

12  investigation of the facts that were actually in dispute.

13  　　　　Plaintiff has consistently asserted that he timely sent his election form to the

14  administrative unit that handles enrollment for the plan.  AR #7 ("I then filled out the paperwork

15  and faxed at appx 6:00 pm on 6/26 as instructed."); AR #8 ("Ac called stating that he made his

16  benefits elections one [sic] the last possible day to enroll . . . .").[1]  Despite the fact that the

17  administrator was aware that plaintiff would not be making his elections through the plan's

18  website (AR # 6 ("He did not [have] access to a computer and I requested packet to be faxed to

19

20  　　　　[1] It should be noted that the administrative record in this matter, particularly Document # 8,
    appears to be incomplete and is so disjointed that it is nearly impossible to piece the "case notes" together
21  in a logical sequence.  For example, the e-mail plaintiff forwarded regarding the confirmation of his
    successful election of benefits (at approximately 2:21 pm on 8/13/03) runs for eight consecutive case
22  notes before ending mid-word (". . . and $1000 for eligible dependent child . . . ).  The next note, which
    contains a time notation of 12:07 pm on 8/13/03) starts in the middle of a sentence (". . . within the 60-
23  day period following your date of hire") and may or may not duplicate part of an earlier note.  The
    disjointed recitation of what should have been a relatively clean and short exchange of e-mails has made
24  this record review very difficult.  Had plaintiff challenged the accuracy and completeness of the
    administrative record, he may have been able to broaden the scope of this Court's review.
25

26  ORDER GRANTING IN PART PLAINTIFF'S
    MOTION FOR SUMMARY JUDGMENT　　　　-3-

him.  Set that up and gave him Source1 fax."), when plaintiff called to find out when he could expect to receive his medical insurance cards the administrator simply checked the computerized systems before concluding that there was no record of any elections.  AR #8 (". . . this needs researched [sic], he is showing with no coverage . . . I checked hris and event is closed.  ac did not make any changes to benefits as indicated on hris.").  Because the benefits system had no record of plaintiff's elections, the administrator simply concluded that plaintiff made no elections.  AR #8 (case note entry dated 8/13/03 at 2:29:38 pm).  Plaintiff's claim that he had faxed the election form to Source1 before the applicable deadline was never considered or investigated.

Defendants' blind reliance on the computerized benefits system and total disregard of plaintiff's statements are inconsistent with the plan provisions for dealing with "Enrollment Error."  Such an error occurs when "an Employee's bona fide attempt to enroll for coverage for the Employee or any Dependent under this Plan . . . was ineffective due to circumstances beyond the control of the Employee or the Participating Employers."  AR #1 at 10.  The plan itself therefore contemplates situations where the administrative unit's records are incomplete and do not accurately reflect the employee's enrollment efforts.  Nevertheless, the fact that such an error could have occurred here was never even considered.  Had the administrator evaluated the facts giving rise to plaintiff's situation, an "Enrollment Error" would have been discovered and the remedial provisions of Section 3.1.8 would have been triggered.  Rather than having to go through the administrative appeals process, plaintiff should have been given the opportunity to enroll in the plan immediately upon establishing that an "Enrollment Error" had occurred, with enrollment being retroactive to the date the original enrollment would have been effective.

The record surrounding plaintiff's appeal shows that the failure to consider, much less resolve, the factual issues at the heart of this dispute continued throughout the administrative process.  Plaintiff was invited to "voice [his] concern to the Benefits

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT          -4-

Administrative Committee" and to "include any paperwork that may be beneficial in this decision process."  AR # 8 (case note entry dated 8/13/03 at 12:07:17 pm).  Having received no other information regarding the kind of evidence required, plaintiff sent his notice of appeal to Mary Miller, again stating that he had timely faxed his enrollment form to Source1.  AR #7. Once again, the fact that the computerized benefits system showed no elections was taken as conclusive proof that no elections had been made.  See AR #10 (handwritten notes interpreting web reports and concluding that plaintiff did not make any elections while on the website).[2]  To make matters worse, when plaintiff's appeal was brought before the Benefits Administrative Committee, plaintiff's argument was mischaracterized as "[w]ants the Plan to allow him to

---

[2]  When the Ninth Circuit was faced with a similar dispute regarding whether a document had been submitted to the administrator, it noted:

> The Plan relied in its factual determination of non-receipt only on the fact that the form is not presently contained in its records.  Permitting a retirement plan to find non-receipt simply on the basis that the records office now cannot find the document, although there is evidence of mailing, is inconsistent with ERISA's purpose to protect employee rights. Employees are often asked to make crucial determinations about the management and disbursements of their retirement benefits by submitting certain documents (e.g., payment election forms) to their retirement plans.  In a large number of cases, submission will occur by mail.  The function of the mailbox rule in this context is to provide employees with a guarantee that, if the retirement plan claims not to have received a document that an employee mailed, the document will nevertheless be presumed to have been received by the plan unless the plan can produce probative evidence of non-receipt.  At the very least, this requires a plan to describe in detail its procedures for receiving, sorting, and distributing mail, to show that these procedures were properly followed at the time when the document in question might conceivably have been delivered by the postal service, to provide evidence that it has conducted a thorough search for the document at the addressee's physical facility, and to establish that had the document been received around the time the claimant asserted it was mailed, it would presently be at the location searched by the Plan Administrator.

Schikore, 269 F.3d at 964.  Although Schikore can be distinguished from the case at hand (the common law mailbox rule is not at issue here), the Ninth Circuit nicely summarizes the kind of investigation the adminstrator should have undertaken to determine whether plaintiff had timely enrolled in the benefits program.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT          -5-

enroll in medical coverage past 60 days of hire date." AR #11 and 12. <u>See also</u> AR #13 ("On September 22, 2003, the Benefits Administrative Committee ("Committee") reviewed your appeal for reconsideration to allow you to enroll in medical coverage past 60 days of hire date. The Committee denied your request."). Plaintiff did not want the plan to extend the enrollment deadlines or to otherwise grant him an exception to the enrollment requirements. Rather, plaintiff asserted that he had, in fact, timely enrolled by fax. There is no indication in the record that the Committee ever investigated the possibility that plaintiff had enrolled by some method other than the website or made any attempt to evaluate Source1's handling of fax submissions. By couching plaintiff's appeal in terms of whether he should be permitted to enroll outside the normal 60-day period, the administrator asked and answered the wrong question. The failure to consider, much less investigate, the possibility that an "Enrollment Error" occurred and the failure to develop any meaningful factual record upon which to determine whether plaintiff timely faxed his election form to Source1 on or before June 27, 2003, were arbitrary and capricious and demonstrate a clear abuse of discretion by the administrator.

(4) Contrary to defendants' argument, there is evidence in the administrative record regarding plaintiff's activities on or before June 27, 2003. Strict rules of evidence do not apply in the administrative context (<u>Tremain v. Bell Indus., Inc.</u>, 196 F.3d 970, 978 (9th Cir. 1999)) and the administrator should have considered plaintiff's unsworn statements regarding his efforts to enroll in the plan. The administrator also should have considered the other record evidence that supports plaintiff's version of the facts: plaintiff made arrangements to fax his enrollment form to Source1 and, within a reasonable amount of time, contacted the plan to find out when he could expect his medical cards. Plaintiff's actions are consistent with his belief that he had timely enrolled and the administrator's determination that such evidence could be ignored is a further abuse of its discretion.

In the context of this judicial proceeding, plaintiff has provided additional

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT            -6-

information, in the form of declarations and documentary evidence, to support his claim. Having found that the administrator's development and consideration of the record was arbitrary and capricious, the Court must determine whether there is a real dispute justifying a remand to the administrator or whether plaintiff's motion for summary judgment regarding eligibility should be granted.  As was the case in <u>Booton v. Lockheed Med. Benefits Plan</u>, 110 F.3d 1461 (9th Cir. 1997), plaintiff's attempts to explain what happened to his enrollment forms were ignored in the administrative process, the administrator made no effort to seek out needed information to resolve the underlying factual dispute, and its decision was based on a mischaracterization of plaintiff's claim.  In such circumstances, the Ninth Circuit considered the new evidence provided by plaintiff and, noting that defendant had provided no evidence that would preserve a dispute, directed the district court to enter judgment for plaintiff.  <u>Booton</u>, 110 F.3d at 1464.

       Throughout this proceeding, the administrator has taken the position that "there is not even a scintilla of evidence in the Administrative Record to support [plaintiff's] contention" that he made benefit elections (Reply at 7-8) and that its computerized records conclusively prove that plaintiff did not make any benefit elections (Reply at 4).  The first position is incorrect and the second, while probative regarding the issue of receipt, is inconclusive and led to defendants' failure to develop a record in this matter.  Defendants now claim that the Committee correctly determined that plaintiff had failed to make a timely election of medical benefits.  Reply at 7.  As discussed above, however, that was not the issue presented to or decided by the Committee.  Following the reasoning of <u>Booton</u>,[3] the Court therefore GRANTS plaintiff's motion for summary judgment regarding his eligibility under the plan and REMANDS this matter to the administrator so it may consider plaintiff's claim for treatment of his sinus

---

   [3] "We do not remand to a plan administrator where the plan administrator has neither engaged in the necessary factual inquiry, nor provided reasons for his determination and is therefore not entitled to substantial deference."  <u>Schikore</u>, 269 F.3d at 965 (citing <u>Booton</u>, 110 F.3d at 1465).

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT     -7-

condition.  The Court's finding is limited to the eligibility issues raised in this action: plaintiff was eligible to participate in the plan from June 27, 2003.  Whether the plan covers the sinus condition of which plaintiff complains and the costs of the treatment he seeks must be determined on remand.  In all further proceedings, the administrator shall treat plaintiff as if he had not been wrongfully excluded from the plan and was eligible for benefits from June 27, 2003.[4]

(5)  Defendants argue that Nationwide Mutual Insurance Company is not a proper defendant in this ERISA action.  Section 1132(a)(1)(B) allows a plan participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  A monetary award obtained in such an action is generally recoverable only from the employee benefit plan itself, not from the administrator or plaintiff's employer.  29 U.S.C. § 1132(d).  Where equitable or injunctive relief may be available, however, liability is not limited to the plan itself.  Harris Trust & Savings Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 247 (2000); Everhart v. Allmerica Fin. Life Ins. Co., 275 F.3d 751, 753-54 (9th Cir. 2001). Although the amended complaint is not a model of clarity regarding the statutory basis for plaintiff's cause of action, plaintiff has requested equitable relief designed to place him in as good a position as he would have been had the administrator determined that his election form was timely submitted.  Defendants' motion to dismiss the claims against plaintiff's employer is therefore DENIED.

(6) The Court has based its finding that the administrator abused its discretion on its failure to consider evidence provided by plaintiff, its failure to investigate plaintiff's claim of timely enrollment, and its failure to consider, much less resolve, the correct factual issue.  In the

---

[4]  Plaintiff shall not, however, be penalized in any way for failing to file a notice, a claim, or other documents prior to the date of this Order.  Having excluded him from participation in the plan, defendants cannot hold him to policy deadlines that were, until today, inapplicable.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT          -8-

hopes of affecting defendants' conduct in the future, however, the Court feels compelled to note that the practice of sending an e-mail stating "CONFIRMATION OF BENEFITS ELECTIONS . . . Congratulations!  You have successfully completed your benefits elections" to persons who had not, in fact, successfully elected benefits is extremely misleading.  Using the same "confirmation of benefits" form for those who made elections and those who did not is ridiculous considering the ease with which such forms can be drafted, stored, and generated in this age of computerized communications.  While defendants correctly note that a careful reading of the e-mail would have raised questions regarding the nature and scope of the benefits elected, a person in plaintiff's position, who believed he had timely submitted his enrollment form, would take defendants' e-mail as confirmation of that belief and either not read the entire e-mail or not understand the rather subtle points and distinctions defendants think are so obvious.  Defendants should be aware that when the Court first reviewed the confirmatory e-mail without the benefit of defendants' explanations regarding how the missive was generated and what the blanks actually mean, it interpreted the e-mail as exactly what it says, a confirmation that plaintiff had successfully elected his new hire benefits.

          For all of the reasons stated in sections (1) through (5) of this Order, plaintiff's motion for summary judgment is GRANTED as to eligibility.  Defendants' motion for summary judgment is DENIED.  This matter is hereby REMANDED to defendant Nationwide Insurance Companies and Affiliates Health Care Plan with instructions that plaintiff was eligible to participate in the plan from June 27, 2003.  The administrator is to provide plaintiff with an opportunity to make a claim for the treatment of his sinus condition as if he had not been wrongfully excluded from the plan.

          The above-captioned litigation is hereby STAYED.  The Clerk of Court is directed to enter a statistical termination in this case.  Such termination is entered solely for the purpose

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT          -9-

of removing this case from the Court's active calendar.  The parties shall, within thirty days of the administrator's final decision on plaintiff's claims for benefits under the plan, submit a joint report under the above cause number.  The report shall notify this Court of the outcome of the appeal, identify the issues remaining to be decided in this litigation, and indicate the date on which the parties anticipate filing their motions for summary judgment.

DATED this 8th day of April, 2005.

Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT          -10-